[No. 2287.]

## George Wimberly *v.* The State.

1. Theft—Limitation—Charge of the Court.—Prosecution for felonious theft is barred by the lapse of five years between the commission of the offense and the presentment of indictment therefor. See the opinion *in extenso* for a state of case which demanded of the trial court a proper charge upon the statute of limitation as applied to felonious theft. Note also a charge of the court *held* insufficient to respond to the issue of limitation as raised by the evidence, and special instructions upon the same question which, embodying the correct doctrine of law, should have been given.

2. Same—Confessions—An Application for a Continuance, made at a previous term of the court, if the accused was in *actual* custody at the time, and was not merely upon bond, partakes so far of the nature of a confession or admission that the same can not be used against him on his subsequent trial, unless he was warned previously that it might be so used. This doctrine is not affected by the fact that since the application was made the indictment was quashed for invalidity and a new one charging the same offense was found. But the defendant in this case being upon bail no error in this respect is apparent.

Appeal from the District Court of Navarro. Tried below before the Hon. L. D. Bradley.

The conviction in this case was had under an indictment charging the appellant with the theft of an estray horse, in Navarro county, Texas, on the twentieth day of May, 1881. A term of five years in the penitentiary was the penalty assessed by the verdict.

Ben Sweatman was the first witness for the State. He testified that he lived about eight miles southeast from the town of Corsicana, in Navarro county, Texas, and knew the defendant, who, in the fall of 1880, lived near the Grape Vine church in the same county. In July or August of 1881 the witness attended

camp meeting at Grape Vine church and while there saw the filly described in the indictment hitched near the church. He knew the filly as an estray and as the colt of an estray mare that had ranged in that neighborhood for several years. The filly was unbranded, but its dam was branded with the figures 2 and 7 and 6, the 7 and 6 connected, the down stroke of the 7 being curled to the right. The 6 looked something like a blotched 4, and some people thought the brand was 274. That filly was ridden to the Grape Vine church on the day mentioned by John Green, the defendant's brother-in-law. Witness often saw the estray filly on the range prior to the fall of 1880, but never saw her afterwards until he saw her hitched at the church. Shortly after the witness last saw the filly on the range the defendant left the country. The animal was between three and four years old and ranged in Navarro county, Texas.

Asa Carr testified, for the State, that during the year 1881 he lived on the Garlie place, about three miles from the defendant's residence, both of which places were in Navarro county. Witness knew the animal described in the indictment, in 1881, and knew her then to be an estray. About the middle of May, 1881, Tom McCarty and the witness rode by the house of the defendant's father, and saw the defendant penning the said filly. Witness had seen the filly on the range about two weeks before, which induced him to ask the defendant how he acquired her. Defendant's reply was: "I stole her from a thief; did you lose her?" He then added that he bought her. Witness told him he had better turn her out, and rode on. Returning to his home that evening, witness again passed Mr. Wimberly's place, and saw the filly staked out near the house. Defendant had approached the witness several times about witness's probable testimony in this case. During the spring previous to this trial, defendant came to witness's field and told witness that they had been good friends, and that he did not want witness to appear against him, and would like for witness to go away. Witness told him that he had no way of going and no money to go on. Defendant said that he would furnish him a horse and pay his expenses. Defendant and the filly disappeared from the neighborhood about the same time.

Lit Garlie testified, for the State, that he was with Sweatman at the Grape Vine church on the occasion mentioned by Sweatman, and saw the animal described in the indictment. John Green rode that animal to the church. The witness had

known the animal as an estray, but had not seen her on the range for several months. The witness never saw the animal in the possession of the defendant.

Tom McCarty, the next witness for the State, testified that he was with Asa Carr on the day mentioned by Carr, and corroborated Carr in almost Carr's identical language. Defendant had several times approached witness about his probable testimony, and, on one occasion, offered to give witness a tie rope to stand by him in this trouble.

District Attorney Rufus Hardy testified, for the State, that the offense charged in this indictment was the same charged in the previous indictment number 2633, The State of Texas v. George Wimberly, which said indictment was quashed because it was presented by a grand jury composed of more than twelve members. The State then introduced in evidence the said indictment number 2633, and closed.

Oliver Wimberly, a brother of the defendant, was his first witness. He testified that he saw the animal described in the indictment in the defendant's possession in November, 1880. He had her tied in his father's stable. Defendant claimed that animal as his own, kept her openly about the place and in the pasture and broke her to the saddle. The witness was the second person who ever rode that animal. She was then unbranded. Witness was able to fix the date when he saw the filly in the stable by the fact that he found her there on his return from Arkansas, and he got back on election day, 1880. Defendant kept that animal in his possession until shortly after he was indicted, when witness rode her into the country and sold her. Defendant disappeared about the same time.

Angus Gillis testified, for the defense, that he saw the defendant in possession of and claiming the animal described in the indictment, in the fall of 1880. On his cross examination the witness said that he sold the filly to the defendant in October, 1880. He acquired her and her dam by trade about three weeks before he sold her to defendant. Witness bought the filly and her dam as they ran on the range on Cedar creek. Witness came from Florida to Navarro county, stopping first at old man Williams's house, and it was while there that he traded for the mare and filly. He traded a mare for them as they ran on the range on Cedar creek. He had forgotten the name of the man with whom he traded. Witness remained in Navarro county about a week after the trade, and then went to East Texas, leaving

the mare and filly on the range. He sold the filly to defendant when he came back through Navarro county from East Texas. He had never disposed of the filly's dam. The defense closed.

The State, in rebuttal, introduced and read in evidence the defendant's application for a continuance, made at the December term, 1885, of the district court, when the trial upon indictment number 2633, referred to by the witness Hardy, was pending. That application sets out that the defendant expected to prove by the witnesses named that the alleged stolen animal, instead of belonging to unknown owners, as charged, was, in truth, the property of the defendant; that he bought and paid for her in good faith, and held and used her openly, and that said animal never was an estray; and that he would prove further, by the said witnesses that the witnesses for the State were mistaken as to the identity of the animal so held and owned by defendant with the estray filly they had in mind.

The motion for new trial raised the questions discussed in the opinion.

*Beale & Autry,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. The indictment in this case, which was for theft of a filly, was presented and filed in the district court on the third day of February, 1886, and the alleged theft, as therein charged to have been committed, is averred to have been so committed on the twentieth day of May, 1881. It will be noted that, from the date of the alleged commission of the theft (twentieth May, 1881), to the filing of the indictment (third February, 1886), was about four years, eight months and seventeen days. At the trial, the defendant's witnesses testified most positively and emphatically that defendant had taken possession of, claimed and used the animal from the fall of 1880; and one of his witnesses, George Gillis, swears that he, witness, sold the animal to defendant in the fall of 1880. If defendant stole the animal, or bought and took possession of her in the fall of 1880, then more than five years had elapsed from such taking to the finding of the indictment; in which case the prosecution would be barred by limitation, our statute declaring that "an indictment for theft punishable as a felony may be presented within five years and not afterward." (Code Crim. Proc., Art. 198.)

Upon the question of limitation thus raised by the evidence, this court simply charged the jury that if they believed "from the evidence that the defendant, George Wimberly, did, in Navarro county, Texas, on or about the twentieth day of May, 1881, or at any time within five years prior to the third day of February, 1886, the date of the finding of the indictment in this case, fraudulently take," etc. Special requested instructions upon the subject, which were asked by defendant's counsel and refused by the court, and bill of exceptions saved, were as follows, viz.: "If you believe from the evidence in this cause, or if you have a reasonable doubt as to the same, that this defendant acquired possession of the animal more than five years before the third day of February, 1886, you will find the defendant not guilty, whether you believe he actually took said animal or not, as under such circumstances the offense is barred by limitation."

"If, under the instructions before given you, you should find that the alleged taking was under such circumstances as would constitute theft, your next inquiry would be as to the time of such taking, and if you should find that such taking occurred prior to the third day of February, 1881, or if you have any reasonable doubt upon this point, then you should find the defendant not guilty."

The learned judge explains his refusal to give these instructions to be because they were given in substance in the general charge. We do not think they were. "A defendant is entitled to a distinct and affirmative, and not merely an implied or negative, presentation of the issues which arise upon his evidence." (Irvine v. The State, 20 Texas Ct. App., 13, and authorities cited.) It was error to refuse the instructions.

A defendant's application for a continuance, made at a previous term of court, provided he was in actual custody at the time, and not merely upon bond, has been held to be so far in the nature of a confession or admission as that the same can not be used subsequently against him, unless he was previously warned that it might be so used. (Austin v. The State, 15 Texas Ct. App., 388. See also Adams v. The State, 16 Texas Ct. App., 162.) The question is not affected by the fact that, since the continuance was moved for, the indictment was quashed for invalidity, and a new one found for the same offense. But in this case defendant was not in actual custody, but on bail, and there was no error.

Other errors are assigned and ably presented by appellant's

counsel, but, in as much, as they are not likely to arise at another trial, they will not now be discussed.

For the errors above mentioned, with regard to the refused instructions, the judgment is reversed and the cause remanded.

*Reversed and remanded.*